UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case Number 14-20117
                                            Honorable David M. Lawson

v.

XAVIER GIOVANNI DELEON,

                Defendant.
_____/

## OPINION AND ORDER DENYING MOTION TO SUPPRESS EVIDENCE

Xavier Giovanni Deleon, charged with various drug crimes, has filed a motion to suppress evidence seized from his home during the execution of a search warrant. He argues that the supporting affidavit did not establish probable cause that drug-related evidence would be found at that location because it contained very few hard facts connecting Deleon to the drug crimes, and the conclusions were unsupported and uncorroborated. He also contends that the affidavit does not contain enough information to establish that the house searched actually belonged to him. The Court heard oral argument on January 27, 2015, and now concludes that the search warrant contained facts from which the magistrate could find probable cause that contraband and evidence of the federal crimes would be found at the premises. The affiant established that the confidential informant was reliable, and that the informant furnished information listed in the affidavit that connected the defendant's criminal activity to the premises. Therefore, the Court will deny the motion to suppress the seized evidence.

I.

On May 16, 2014, a federal grand jury indicted twenty-six people, including defendant Xavier Giovanni Deleon, in a ten-count superseding indictment charging various drug and firearm crimes. The government alleges that the defendants participated in a drug trafficking organization led by Manolo Alfonso Garza, that distributed multiple kilogram quantities of cocaine and heroin on a monthly basis throughout the Detroit Metropolitan area. Garza apparently received narcotics from his family in Mexico, who coordinated shipments of the narcotics to Chicago, South Carolina, and Detroit. Garza allegedly provided the narcotics to his top distributors for sale.

On February 8, 2014, the Drug Enforcement Agency ("DEA") obtained warrants to search eight properties associated with members of the drug trafficking organization. Many of the facts relating to the eight separate premises were common, and the DEA presented a single affidavit in support of all eight search warrants. The affidavit, predictably, was lengthy: it consisted of 106 paragraphs over 40 pages. The allegations pertaining to the residence about which Deleon complains, 22871 Sherry Drive, Brownstown, Michigan, however, are limited to ten or fewer paragraphs. Chad Hermans, an agent with the DEA, signed the affidavit.

According to Hermans, his statements in the affidavit were based on his participation in the investigation, oral and written reports from law enforcement officers, physical surveillance, and information obtained from a review of telephone toll records. The affidavit also relied heavily on a confidential informant, who had been helping Garza wire transfer small amounts of drug proceeds to Mexico. Hermans averred that the informant was credible and reliable because past information he supplied had been corroborated independently in previous law enforcement operations, information gathered from public and law enforcement databases, surveillance conducted by DEA

agents, and other members of the drug trafficking organization.  Hermans noted that the informant provided information directly related to a seizure of three kilograms of cocaine and one kilogram of heroin on July 2, 2013 and had provided valid telephone numbers for members of the drug trafficking organization every time they stopped using their previous phones.  And the affidavit stated that the informant had provided information on vehicles that the drug trafficking organization uses, which agents corroborated.

The home located at 22871 Sherry Drive, Brownstown, Michigan was among the eight properties that the DEA sought authority to search.  The affidavit described the home as "Target Premises 7," which "is believed to be the current residential address of Xavier **DELEON** and is used to facilitate the Garza drug trafficking organization."  Search Warrant Aff., dkt. #241-1 ¶ 30.

The affidavit contained several factual allegations that attempted to connect Deleon with 22871 Sherry Drive.  Hermans stated that the informant "has provided addresses that are currently, or have been used previously, by members of the GARZA DTO, which have been independently corroborated by your Affiant."  Search Warrant Aff. ¶ 35 n.1.  As pertinent here, the confidential informant indicated that "Deleon has full access to all of Garza's 'stash' locations and most likely would use Deleon's private residence, Target Premises 7, as a 'Stash' location."  Search Warrant Aff. ¶ 94.  The affidavit also described law enforcement surveillance at 22871 Sherry Drive.  On December 10, 2013, about two months before the search, agents observed Deleon parked at that address.  Search Warrant Aff. ¶ 92.  Officers also followed Deleon to his "known residence at 22871 Sherry, Brownstown, Michigan" on January 16, 2014 after observing Deleon's pickup truck parked at Target Premises 5 next to co-defendant Garza's F-150, Brandon Jaime's 2007 Chevy Tahoe, and Suarez's F-150.  Search Warrant Aff. ¶¶ 99, 105.

The affidavit also described in detail Deleon's role in the drug trafficking organization. Hermans stated that the confidential informant told him that Garza tasked Deleon with installing safes at all of Garza's stash houses, including a safe at a residence that a confidential informant had obtained for Garza. Search Warrant Aff. ¶ 90. The affidavit also stated that Suarez, one of the members of the drug trafficking organization, had begun training Deleon to take Suarez's place as a drug courier. Garza apparently was concerned that Suarez's criminal history would draw law enforcement attention. Deleon, the affidavit notes, has no known criminal history.

The affidavit related the contents of wire communications intercepted by agents on December 9, 2013 from Garza's cell phone when talking with his supplier in Mexico. During the conversation, Garza informed his supplier that "I still have two," which agents believed to be referring to kilograms of cocaine or heroin. Search Warrant Aff. ¶ 91. Agents believed that Garza would try to distribute those kilograms the following day to Suarez and Deleon.

The affidavit described agents' efforts to confirm those suspicions through surveillance. On December 10, 2013, at approximately 10:15 a.m., agents located Deleon at 4847 Proctor Street through a GPS location tracker on his cell phone. Officers observed Deleon driving a red Jeep Grand Cherokee, a car that Garza previously drove. The confidential informant stated that the vehicle contained a hidden compartment or "trap." Per the affidavit, agents observed Deleon drive the red Jeep to several addresses for a short duration of time that morning and early afternoon. Officers also observed Suarez and Garza park at one of those addresses, 1127 Detroit Avenue, and enter the residence with an unidentified white male.

Hermans explained in the affidavit that on December 11, 2013, agents began intercepting cell phone calls between Garza and his Mexican source discussing arrangements for couriers to pick up

narcotics proceeds.  The source sending the courier to pick up the money was named "Bigotes."
Garza informed his Mexican source that he was not ready for the money pickup because he still had
two kilograms of narcotics.  However, the source still wanted the couriers to pick up whatever
money was ready.  Garza implied that he owed $315,000 and could pay about $200,000.

Hermans averred that on December 12, 2013, agents observed Suarez, Garza, and Deleon
at 1127 Detroit Avenue at approximately 10:00 a.m.  Suarez and Deleon left the premises in separate
vehicles about 11:30 a.m.  Agents set up surveillance around 25109 Pamela Street, Taylor, Michigan
at approximately 11:50 a.m.  Agents observed Suarez's Ford F-150 pickup truck in front of the
residence and a black Chrysler 200M with a Georgia license plate.  Around 1:12 p.m., agents
observed Deleon exit a tan GMC pickup truck, a vehicle that the confidential informant said that
Deleon is known to drive.  Deleon exited the area in the truck at about 1:20 p.m. The Chrysler
200M, occupied by two Hispanic females, left the premises around the same time.  The affidavit
stated that the confidential informant previously had told Hermans that Garza's Mexican source
liked using females as couriers to avoid detection.

The affidavit continued, stating that troopers from the Ohio State Highway patrol conducted
a traffic stop on the Chrysler 200M at approximately 2:23 p.m. while it was traveling South on I-75
near Bowling Green, Ohio.  The Ohio State Highway patrol conducted a K-9 sniff on the vehicle,
which detected the presence of narcotics at the trunk of the vehicle.  The affidavit stated that, upon
opening the trunk, troopers observed a blue gym bag that contained several heat sealed packages of
United States currency totaling $211,150.  The driver and passenger denied all knowledge of the
currency in the trunk and were later released by the Ohio State Highway patrol pending additional
investigation.

-5-

Following the money seizure, the confidential informant stated that Deleon stopped utilizing the red Jeep Cherokee. The informant believed that the vehicle was being stored at Target Premise 2 in an effort to avoid detection from law enforcement.

The affidavit also related that on January 16, 2014, officers continued surveillance of Deleon. They observed his GMC pickup, Garza's F-150, Suarez's F-150, Brandon Jaime's 2007 Chevy Tahoe, and a 2009 Dodge Ram parked at Target Premises 5. Agents later observed Deleon leave in his GMC truck, where he was followed to his "known residence" at 22871 Sherry, Brownstown, Michigan.

The search warrant issued on February 8, 2014 permitted law enforcement to search 22871 Sherry Drive, Brownstown, Michigan for evidence relating to the drug trafficking organization. Law enforcement executed the search warrant on February 12, 2014 and recovered a Bushmaster Carbon 15 rifle with a 37mm grenade launcher; a universal rifle; a Mossberg 12 gauge shotgun; a Marlin .35 Caliber rifle; a mosin-Nagant M-19 rifle; a Marlin .22 caliber rifle; three rifle magazine cartridges loaded with .223 ammunition for the Bushmaster Carbon 15 rifle; a bullet proof vest; and two digital scales.

Deleon has moved to suppress all that evidence.

## II.

Under the command of the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961). "In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude" that probable cause exists. *United States*

*v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983));

*see also United States v. Grubbs*, 547 U.S. 90, 94-95 (2006).   On the continuum between doubt and

certainty, "[p]robable cause arises if there are 'reasonable grounds for belief, supported by less than

prima facie proof but more than mere suspicion.'"   *United States v. Coffee*, 434 F.3d 887, 892 (6th

Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).   The test for

probable cause calls for an assessment of whether there is "a 'fair probability,' given the totality of

the circumstances, that contraband or evidence of a crime will be found in a particular place."

*United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v. Loggins*, 777

F.2d 336, 338 (6th Cir. 1985)).   A magistrate properly reaches this conclusion only when the warrant

affidavit sets forth sufficient facts that provide a "'substantial basis' for concluding that 'a search

would uncover evidence of wrongdoing.'"   *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994)

(quoting *Gates*, 462 U.S. at 236).   As the Sixth Circuit has explained, the concept of probable cause

is not easily reducible to a simple formula:

> Probable cause is defined as reasonable grounds for belief, supported by less than
> *prima facie* proof but more than mere suspicion, that there is a fair probability that
> contraband or evidence of a crime will be found in a particular place.   This
> determination does not lend itself to the application of rigid legal rules. . . . Rather,
> the probable cause standard is a practical nontechnical conception wherein we deal
> with probabilities which are the factual and practical considerations of everyday life
> on which reasonable and prudent men, not legal technicians, act. Stated otherwise,
> probable cause is a fluid concept — turning on the assessment of probabilities in
> particular factual contexts — not readily, or even usefully, reduced to a neat set of
> legal rules.

*United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (citations omitted).   To encourage law

enforcement officers to seek warrants, the Supreme Court has counseled that in close calls, doubtful

warrants should be upheld.   *Gates*, 462 U.S. at 237 n.10.   And "'reviewing courts are to accord the

magistrate's determination 'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (quoting *Gates*, 462 U.S. at 236).

Of course, "[t]here must . . . be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). But "[p]robable cause is described as a fair probability — not an absolute certainty — that evidence of a crime will be found at the location." *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008) (quoting *Gates*, 462 U.S. at 238).

An informant's tip may, under certain circumstances, establish probable cause. In *Illinois v. Gates*, the Court adopted a totality of the circumstances test for determining whether an informant's tip establishes probable cause. The Court held that "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place." *Gates*, 462 U.S. at 238.

An informant's "veracity" and "basis of knowledge" are highly relevant to evaluating whether an informant's tip establishes probable cause. *Id.* at 230. Veracity involves the credibility of the informant or, alternatively, the reliability of the informant's report. *Gates*, 462 U.S. at 229. A magistrate must be informed about some of the underlying circumstances indicating that the informant was credible or that his information was reliable. *Aguilar v. Texas*, 378 U.S. 108, 114 (1964). "Basis of knowledge" refers to the particular means by which the informant obtained his information. *Gates*, 462 U.S. at 228. A magistrate judge reasonably may infer from detailed

-8-

information supplied by an informant that he gained his information in a reliable way. *Spinelli v. United States*, 393 U.S. 410, 416 (1969).

Deleon argues that there was no probable cause to issue the warrant because the confidential source's allegations about Deleon's alleged criminal activity are conclusory. Deleon argues, in other words, that the affidavit contains no information about the informant's basis of knowledge. His argument focuses on a significant weakness in the affidavit. The affidavit links Deleon to the drug trafficking organization largely through the confidential informant. The informant apparently told agents that "Deleon was previously tasked with installing safes at all of Garza's 'stash' houses," including the stash house the informant obtained for Garza, and was being trained to take Suarez's place as a narcotics courier. Search Warrant Aff. ¶ 90. However, the affidavit does not state how the confidential informant came upon this information. There is no evidence that the informant observed Deleon install the safes, participated in training Deleon to become a narcotics courier, or learned the information alleged in the affidavit from Garza or Suarez. Nor does the affidavit state how the informant knew Deleon, if at all.

Nonetheless, that deficiency is not fatal to the search warrant in this case, because the confidential informant's reliability was so well established that it fortified the anemic showing of his knowledge base. The Supreme Court explained that "veracity" and "basis of knowledge" are not "elements [that] should be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230. Instead, veracity and basis of knowledge "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Ibid.* "[A] deficiency in one may be compensated for, in

-9-

determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-39 (internal citations omitted).

Moreover, the precedents do not prescribe any specific formula by which reliability is to be gauged, *Allen*, 211 F.3d at 975-76; as a general rule, however, the decisions have required either independent corroboration by law enforcement officials or some showing that the informant is otherwise reliable, such as a history of furnishing information that turned out to be accurate. *See United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (noting that "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information"); *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) (stating that "if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required"); *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (observing that "in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration"). The focus must be on the totality of circumstances and not their granular components.

The affidavit contains overwhelming evidence that the confidential informant's allegations are reliable: officers verified a substantial portion of the information that the informant supplied. For instance, the affidavit notes that the informant, an associate of Garza, provided valid telephone numbers for members of the drug trafficking organization every time they stopped using their previous phones. Search Warrant Aff. ¶ 35 n.1. On one occasion, the informant contacted Garza in the presence of agents on May 14, 2013. *Id.* ¶ 52. When Garza did not answer, the informant

-10-

contacted Suarez; a few minutes later Suarez called the informant and told him to meet Garza at his mother's house. *Ibid.*

The informant also told agents in May 2013 that Garza was attempting to separate from his wife and was living at 25108 Pamela Street, Taylor, Michigan. *Id.* ¶ 55. On May 23, 2013, agents observed Garza at the Pamela Street address. *Ibid.* On June 7, 2013, the informant photographed and sent to agents Garza's drug ledger that contained instructions to deposit money into specific Chase Bank accounts along with what appeared to be money that Garza's drug customers owed. *Id.* ¶ 57. And, on November 4, 2013, the informant advised agents that the Melvindale Police Department had arrested Suarez for drunk driving. *Id.* ¶ 83. Agents verified Suarez's arrest that day, inspected his car, and discovered a trap. *Id.* ¶ 85.

Agents also verified some of the information that the informant provided about Deleon. The informant alleged that Suarez was training Deleon to replace him as a drug courier. Although agents did not observe Deleon transport drugs, they did observe Deleon pull up to several driveways and park for a short period of time, activity that agents believed was consistent with drug trafficking. *Id.* ¶¶ 61, 92, 94. Moreover, agents observed Deleon with Suarez and Garza on multiple occasions at other properties linked to the drug trafficking organization. The informant also told agents that Deleon drove a tan GMC pickup truck, bearing Michigan license plate CHF8166. *Id.* ¶ 94. Officers observed Deleon driving the GMC pickup on December 12, 2013. *Ibid.* The informant's proven and corroborated reliability supported the magistrate's determination of probable cause, despite the thin information about the source of his knowledge. *See United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) ("'If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activity in a locality, his failure, in a particular case,

-11-

to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.'") (quoting *Gates*, 462 U.S. at 233).

Next, Deleon argues that there are no facts from which the issuing judge could conclude that 22871 Sherry Drive was Deleon's residence. That argument ignores the reality that "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978); *see also United States v. Pinson*, 321 F.3d 558, 564 (6th Cir. 2003) ("[A]n affidavit in support of a search warrant does not need to name or describe the person who sold the drugs or name the owner of the property."). Nonetheless, it can be said that a key fact in the probable cause finding that evidence would be found at the Sherry Drive residence was proof that Deleon was connected to the Garza drug trafficking organization, and the Sherry Drive house was connected to Deleon. The affidavit, however, furnished enough information to establish those links for the magistrate.

The affidavit stated that the informant "provided addresses that are currently, or have been used previously, by members of the Garza DTO, which have been independently corroborated by your Affiant." Search Warrant Aff. ¶ 35 n.1. The affidavit also stated that 22871 Sherry Drive was Deleon's "known" residence. *Id.* ¶ 105 ("Deleon was followed to his known residence at 22871 Sherry, Brownstown, Michigan"). Based on those allegations, a judge reasonably could conclude that Deleon resided at the Sherry Drive house.

Deleon argues that the facts establishing Sherry Drive as his residence are insufficient because there are no allegations that Deleon owned or rented the premises, no evidence of intercepted calls that established his residence, no evidence that a vehicle was registered to Deleon

-12-

at the address, or any surveillance at the address consistent with narcotics activity.  That is true; but an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). What *was* furnished is sufficient to allow the magistrate to draw the common-sense conclusion that there was "a fair probability" that Deleon lived at the Sherry Drive house.

Finally, Deleon argues that there are no facts or circumstances from which a magistrate could link the premises to the alleged criminal activity.  He correctly asserts that the fact "that there is probable cause to arrest a person for a crime does not automatically give police probable cause to search his residence or other area in which he has been observed for evidence of that crime.  If the rule were otherwise, 'there would be no reason to distinguish search warrants from arrest warrants[.]'" *United States v. Savoca*, 739 F.2d 220, 224-25 (6th Cir. 1984) (citations omitted). Instead, "[t]here must be 'a nexus between the place to be searched and the evidence to be sought." *Frazier*, 423 F.3d at 532 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

The government notes that the Sixth Circuit has decided several cases upholding search warrants for the homes of known criminals — mostly drug dealers and manufacturers — based on the logical premise that incriminating evidence is likely to be found at the residences of drug dealers when there is probable cause to believe that an individual is a drug trafficker (and not merely in possession of controlled substance).  *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007) (upholding search of residence based on probable cause that the defendant was involved in the manufacture of a controlled substance in another location, and noting that "[i]n *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002), we held, following a long line of precedents, that

-13-

a sufficient nexus existed to search the residence of a known drug dealer after he had been arrested for possession of cocaine."); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002) (collecting cases); *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000); *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (stating that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live"); *see also United States v. Yates*, 132 F. Supp. 2d 559, 564-65 (E.D. Mich. 2001).  Nonetheless, following the injunction that the probable cause determination cannot be "reduced to a neat set of legal rules," *King*, 227 F.3d at 739, the court has stopped short of establishing a categorical rule that an arrest of a known criminal *ipso facto* justifies the search of his home.  *See Frazier*, 423 F.3d at 532-33 (holding that "[w]here, as here, the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnessed illegal activity on the premises of the proposed search), the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence").  Instead, the affidavit must allege facts establishing "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place."  *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985)).

The affidavit in this case provides the necessary nexus.  The affiant averred that the residence "is believed to be the current residential address of Xavier Deleon and is used to facilitate the Garza drug trafficking organization."  Search Warrant Aff. ¶ 30.  The informant indicated that "Deleon has full access to all of Garza's 'stash' locations and most likely would use Deleon's private residence, Target Premises 7, as a 'Stash' location."  *Id.* ¶ 94.  The affidavit did not state why the informant believed Garza would use Deleon's home as a stash location.  But he provided substantial detail that

-14-

Garza used other addresses to "stash" money and proceeds from drug sales. *See id.* ¶ 79. And, as discussed already, there is overwhelming evidence that the informant was credible and reliable.

III.

The facts supplied by the affidavit were sufficient for the magistrate to find probable cause to believe that evidence of the drug crimes would be found in Deleon's premises. Because the affidavit furnished a proper basis to issue the search warrant, the resulting search of the Deleon's house at 22871 Sherry Drive, Brownstown, Michigan, did not offend the Constitution.

Accordingly, it is **ORDERED** that the motion to suppress evidence by defendant Xavier Giovanni Deleon [dkt. #241] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  February 3, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 3, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI